Good morning and welcome to the Ninth Circuit. Judge Sanchez and I would like to start by thanking Judge Prattle for coming and she helped us out yesterday, she's helping us out today in hearing cases all the way from Kansas and helping us with our busy caseload so thank you Judge Prattle. Thank you. And I see we kind of have a full house. My understanding is we've got law students so those of you arguing should probably be on your best behavior this morning. We've got some cases that were submitted without argument so I'm going to go ahead and name those first and then I think we have a couple cases for argument today. The first case we've got is case number 21-1022, Carmargo Gomez. That case is submitted on the briefs. Case number 323, Bernal Gonzalez is also submitted on the briefs without argument. Case 21-486, Ramirez-Guerrera is also submitted without argument. Case 21-816, Lynn is also submitted without argument. And then the last case that will be submitted without argument is case 22-761, Santiago Grande is also submitted without argument. And we have two cases for rebuttal. The first today will be United States v. LaVar and that case has ten minutes per side. I think we've got counsel for both sides in person today and so when you step up, if you're presenting first, let us know how much time you want to reserve your name and how much time you want to reserve for rebuttal. May it please the Court, Steve Sadie for Mr. LaVar. I hope to reserve two minutes for rebuttal. In Santabella, the Supreme Court established the principle that due process and the system of plea bargaining require prosecutors' scrupulous adherence to promises made in plea agreements. In this case, the government does not address this Court's post-Santabella argument cases about compliance with the promise for a joint recommendation of a mid-range sentence. Instead, the government's primary position is that they weren't bound by the plea agreement. This position is not supported by the facts or by the law. Can I jump in real quick with a question that I'm struggling with? So the district judge said categorically he found that the government did not breach the plea agreement. What do we make of that? How does that fit into your argument? This Court has done no review of compliance with plea agreements. We've had very similar situations, for example, in Alcala-Sanchez, where the Court heard not only the government retracting its violation, but apologizing for it. But the Court said no, despite the district court's ruling, it was reversed and vacated because the bell couldn't be unrung, is what the Court said. It's 666 F3rd at 576 to 77. It directly addressed that. And I think that a number of the cases in Santabella included that same type of situation, where, remember, the district court said, I'm not going to be affected by this at all. But still, it was reversed. It was automatic because the bell can't be unrung. We can never decide how that affected the ruling. And he has the right to the benefit of his bargain. So that if you find that there was a plea agreement violation, it's automatic reversal. And here, it has to be remanded for a resentencing for a specific performance before a different district court judge. Kagan. Can I ask? So we know the phone call took place, the ground on which the government suggested the defendant had breached the plea agreement. And it's your contention that the government breached by not following the recommendation under the plea agreement. What should the government have done with respect to that phone call, if anything? In the November 17th email that I sent to the prosecutor, we said, it's fine. We agree. Give the recording to the district court judge. It's fine to argue about whether that constitutes acceptance or responsibility or not. But you cannot make a change in your plea agreement recommendation until there's a decision, because it said, as long as you accept responsibility, we will make the joint recommendation. I said it was premature to change your recommendation. Notwithstanding that, they went forward with a sentencing recommendation in a sentencing memorandum arguing for the high end. And we had repeatedly in a letter to the judge of December 13th, we said, it's premature. This is a decision for the court. We said it repeatedly during the sentencing hearing. This is a well-preserved problem here, that the government had no authority to say that the plea agreement was not that they could violate the plea agreement unless the judge made a first ruling. This is a judicial decision. Under Rule 11, the judge had accepted that plea agreement. Government can ask a question about that. Like, the judge is both under your view, the judge is the decider of whether the plea agreement was breached, right? And you think the judge should have the first . . . should make that decision first. The judge is also the sentencer. Presumably, it would be the same judge. It would have been in this case. I'm just trying to figure out, like, practically what difference it makes. I totally get the idea that if the judge was completely cut out of the idea of . . . was completely cut out of considering whether the plea agreement had been breached, you know, if it was somehow the government's unilateral decision and the judge never got to address that, that that would be problematic. What I'm having trouble with is why it makes a difference whether the government says, you know, we think you breached the plea agreement and we're off the hook. And so, it comes to the judges, we think they breached the plea agreement, so we're going to do something different. And then if the judge disagrees with that, then it seems to me the judge can . . . is really not in that much different of a position. I mean, at that point, that would actually benefit your client. If the government did something and the judge came out and said, you've . . . you know, you said he breached the plea agreement, but he didn't breach the plea agreement, then I would think that would make the judge more inclined to sentence your client more leniently. But if the . . . if, as in a case like this, where almost surely the judge is going to say, you breached the plea agreement, then what difference does it make if the government concludes that first and comes . . . I'm just trying to figure out, like, why it makes a difference to have the courts decide it before the government can make the argument, when the government . . . the court, after the fact, could say, no, government, you're wrong. Because the poisoning has already happened. How has the poisoning happened? That's what I'm trying to figure out. Like, this . . . because somehow the judge is, like, just like, oh, I can't depart from what the government's told me? I don't understand. Yes, that is exactly it. That is what the . . . in Heredia, this Court said that if the Court said, yes, there was a plea violation, what they should do then is send it to another district court judge, because you cannot calculate how that would have negatively affected the judge. You get to have the benefit of the bargain without the preliminary taint of the violation. And here, the violation was . . . That's a really odd . . . that's a really odd view. You're talking about which case is that, which circuit? That's Ninth Circuit, Heredia. That's a really odd . . . maybe that's our case law, but it seems really odd to me that the judge can't . . . you know, the judge gets this plea from the government, gets this argument from the government, and the government says, you know, we're arguing for something different than what we agreed to, but that's because he reached a plea agreement. And if the Court concludes that the government's wrong, I don't . . . I mean, I would think that you would be really happy with that, because at that point, the Court's probably a little upset at the government for, like, having . . . but if the Court concludes that the government's correct, then what's the harm in the government . . . That's what I said in my email to the prosecutor. If it turns out you're right, then there's no problem, but you are taking the risk of a violation if it doesn't come out that way. That's why it's pretty much . . . I get that the government's taking the risk. The government's taking the risk in the sense that, like, if the Court concluded there wasn't a breach, then the Court could be mad at the government and sort of respond in a way that, like, is favorable to your client. But if it goes the other way, like, where's the harm to your client in the fact that the government considered your client to have breached, and then the Court later concludes, you know, the government was right? Because the recommendation was made. It was already made enthusiastically saying he should get the high end of the range. That hurt us, and we never . . . But in that situation, in that situation, the government was entitled to make that, because your client breached in that situation. No. Yes. If he breached and they were free to do it, we don't have a problem. The problem is that they did breach. And so if they did breach . . . This is really important. This is really important. I know we're running out of time. So I want to make sure I understand this right. Are you saying that as long as the Court ratifies, if the government concludes they breached and the Court, after the fact, ratifies and says that your client did in fact breach, then you don't have a problem? I think it's a due process violation, but a due process violation that has less in terms of damage that occurred rather than here, where there was a due process violation. What is the damage? What is the prejudice? That's what I'm getting at. You're saying, well, the government can't un-recommend what's recommended, but it was allowed to recommend that because the Court has since concluded that your client breached. They never concluded that . . . I'm saying in that circumstance that I'm talking about. Like, what is the problem if the government turns out, its prediction turns out to be right? What is the problem in that? They lucked out. They lucked out on a due process violation. But you would not have a problem if it turned out . . . I would have a problem with it because I think that under the four circuits that say you cannot unilaterally violate a plea agreement, that is the judge's job. Do not usurp our judicial function by arrogating to yourself the power to say that a plea agreement is not going to be met and actually make the contrary recommendation. I understand that's your position. I'm just trying to figure out, like, why? Because we don't treat other contracts like that. You know, like, if I think that, you know, if Judge Sanchez and I have a contract, I think he's breached the contract, then I can go and act according to the fact that I think he's breached the contract. Now, if it turns out later a judge says, no, it turns out Judge Sanchez didn't breach the contract, then I'm in trouble, right, because now I've breached the contract. Mr. Citi, can I follow up because I actually wanted to ask about this? As I understand it, other circuits have held that position that the government cannot unilaterally act because of a, excuse me, it's a due process interest and it comes directly from Santabello, right, that if a defendant who is giving up their constitutional rights to a trial and other interests has a right, a reasonable expectation that the government will comply with their terms of the agreement and these circuits, I think it's actually six or seven, as I've, as my staff has researched, has determined that the government cannot unilaterally act to withdraw from the plea agreement. They have to ask for a judicial determination of that. Are you aware of any circuits that have gone the other way that say that the government can unilaterally act to withdraw? No such precedent, Your Honor, and I would refer the Court to this Court's decisions in Myers and Johnson that says that the, there's a law of contracts specific to pleas where harmless error does not apply, which I think addresses the point that Judge Van Dyck was making, and that the Heredia citation that I was referring to about breach and transfer, about how important that recommendation is on a clean slate, is at 768 F3rd at 1236, and I've. Before you present, so what about the Tenth Circuit in that Calabresi case? I thought that the Tenth Circuit had concluded that the government, in a sense, can't act unilaterally, but that it, but it can act first, and then the, and then the Court can ratify after the fact. As a, I, I saw the, read the Tenth Circuit case as not allowing for the, for a, preemptive strike, and, and in Cujo, which is Tenth Circuit, they say that the government may not unilaterally declare a breach of a plea agreement. A court must hold a hearing and make a finding that the defendant breached the agreement before the defendant is released from its obligations under the agreement. That's Cujo. And so I think the Tenth Circuit has that same rule. They're, they're, I love the Tenth Circuit. Me too. Okay. Can I just ask one question before you sit down? First of all, I wasn't endorsing that particular case. I just happened to be from the Tenth Circuit, and so that's why I said I love them. So, there's this issue about whether your client did something which excused, so assuming the, the government breached, whether your client did something that excused that breach, was there something in the hearing below, so I guess I'm kind of confused by what defendant might have done to breach the agreement. Was there something in the agreement that obligated him to not make phone calls or not commit other crimes, or is it just that if he did those things, there would be consequences under the plea agreement? Yeah. The plea agreement, the government is relying on is paragraph 14 and paragraph 8, and those refer to committing new crimes. The court declined to make a ruling on it, and that's why procedurally, we don't even get to that, because this court doesn't make decisions on the first instance. They had, the court had every right not to make a decision on that, and there was no cross-appeal. And at Executive Record 23, the prosecutor said he was satisfied with the record as it stood, which was no decision on that matter. So, the only matter before this court is the violation. The violation was serious, three different ways that we've outlined in our briefing. All right. Thank you. Any other questions? We'll make sure you have some time for rebuttal. Thank you. May it please the Court. Suzanne Miles for the United States. I just want to clarify one thing from the very beginning. We're not advocating that the government can unilaterally decide that a defendant breaches a contract. We absolutely agree that the court gets the last word on that. Whether the court gets the first word or the last word, that's really a procedural question, and it's true that a number of circuits have held that procedurally, the court has to have the first word. Well, Ms. Miles, how do you explain the sentencing memorandum that, as I understand it, was filed with the court prior to the court making a judicial determination? Right. We didn't ask for a judicial determination first here, but the sentencing memorandum was essentially a combined motion for finding of breach and then an argument in reliance on that finding, on the future finding. And it happens that the district court decided not to. It was styled that way as a motion? It was — was it a motion for the government to be able to withdraw from the terms of the plea agreement? That's what it was in substance, yes. It wasn't styled as a motion, but it did say that the defendant had breached — the defendant had breached, had not breached, and, Your Honor, to this point, it's not actually a breach. There's a provision in Paragraph 14 that says that if the defendant either breaches a promise that's made in the plea agreement or commits a new crime, under either of those circumstances, Paragraph 14's escape hatch unilateral release clause is triggered, and in this case, it was the new crime. And so — Is there a problem in that the government was recommending a different term of sentence than what had been agreed to in the plea agreement? It's a little bit tough to have it both ways, it seems. Right. If you're — if, in substance, it was asking for — to be relieved of the government's obligations to stand by the plea agreement, but by the same token, you were recommending a different sentence than what was required in the plea agreement, aren't you jumping the gun? Well, to Judge Van Dyke's point, we're just taking a risk. We're taking a risk that we're wrong, and that's what we did here. We took a risk. Based on this record, we thought it was very clear that the defendant had committed a new crime. There's no dispute of fact here. The call was recorded. All of the information that you need to be able to apply the facts, the undisputable facts of his conduct to the state law is apparent and cannot be disputed. Well, but that's, I think, a little bit beside the point. And I may agree with you that there could very well have been a violation, but Santabello, Farias Contreras, we have many cases in the Supreme Court that would have said that's a violation of the defendant's due process rights if the government doesn't comply with the terms of the agreement. Well, it's a violation of the defendant's due process right if the government doesn't comply with an agreement that it is still bound to. But that's the issue of this case, is that if the government is no longer bound, if it's released because of paragraph 14, then it is free to argue anything it wants. But then that gets back to the original. I thought you were making the point that the government is not saying that the government may withdraw unilaterally from the plea agreement. I guess my point is that the government doesn't get the only word. And so when I read unilaterally, what I mean, what I read is things like our cooperation agreements, where we say as part of the contract, we get to decide whether you've cooperated or not, and the court doesn't get to have a word in that. That's what I mean by unilaterally, that the court doesn't get to review it, doesn't get to tell us that we're wrong. This Calabresi case, the question of a defendant's breach is not an issue to be finally determined unilaterally by the government. I think the reason they wrote it that way, my understanding of the facts of that case is that the government can make a move at its own risk, but at the end of the day, the court's got to be involved in deciding, and it's obviously the final decider. And so that's what I was trying to ask earlier. And I think I heard, I think I heard your colleague on the other side say that there are no cases involved. I mean, there's three different situations, right? You've got the situation where the government just gets to act and the government's the decider. I don't think anybody's arguing. You're not arguing for that. The second is that the court has to move first. The government's hands are tied. It cannot, it breaks through, even if the other, even if he's breached the agreement, if the government moves first, it's violated their due process rights. The third would be, and I understand that might be your argument, is that the government can, if it wants to be, not take a risk, it can get a decision from a court, but it can also move, it can also move first, but then it's taking a risk and the court gets to decide that. What I'm trying to figure out is how many, I think some of the circuits have made it sound like the second scenario, that it's basically just, you know, you have to go in and get the blessing of the court first. Your hands are tied. And I think your colleague made it sound like the Tenth Circuit, he had a different case, that he said fell in that camp, but it looks to me like the Calabresi case falls more in the camp. I agree with you. And I think it's Cudjoe is the Tenth Circuit case, and maybe Judge Rattle knows that better than I do, and I don't know the timing of those two cases. When I read the plain language of the Cudjoe case, I hear what Mr. Sady hears. I hear, and I think that I don't have the quote in front of me, but there is a piece of that decision that certainly says the government can't move without the court making a decision first. But when I look at the case that you're reading, Your Honor, I hear what you hear as well. And so I don't know how to resolve that conflict in the Tenth Circuit. If you say the government can't act unilaterally, that's just heard to say, you know, some people think that's just saying, well, the government can't act first. But I'm not sure that just any cases to say you can't act unilaterally. But I do think there are cases that make it sound like the government just can't act first. Well, can I clarify something that's not clear in my mind? What does it mean for the government to take a risk? Because if the government not acting unilaterally means the government is under an obligation under the plea agreement to recommend a midterm sentence. But the government here has sent in a sentencing recommendation that advocates for an upper term sentence. That's on its face a breach of the government's obligation to recommend a different sentence. What — how does risk fit into — I'm not sure what taking a risk means in the context of that. Can you explain what you mean by that? I think what it means is that if the court looks and disagrees with the government and finds that it still is bound by the terms of the plea agreement, then the defendant gets the remedies under contract law that it would get otherwise, which is essentially specific performance. How does that square with Furias-Contreras, our recent Ninth Circuit case, that even implicitly undermining the actual sentencing recommendation at sentencing was enough to be a breach? Which is, I think, a much softer case than the one we have here. So if the government is obligated to recommend something and then makes arguments at sentencing that seem to undermine that advocacy or that obligation, that's enough to cause a breach. If risk were an actual thing that could happen, then one would think that possibly the government's taking a risk. But the panel didn't see it that way. They said, the government, you're obligated to do this. You advocated for this. You're in breach. Now, under Santabella, we have to send it back and send it to a new district court judge to re-sentence. I don't see how risk enters into our circuit precedent. Well, I guess I can answer your question, which is, if I understand it, the question is, what does the government stand to lose if it takes this position? Is that essentially what you're asking? No, it's more, I don't know that there's any room for risk-taking, to call it by another name. It's just, it's breaching the agreement. It seems to me, if the Ninth Circuit adopts what most of the other circuits have adopted, it would, what would be required is for the government to actually move to withdraw from the terms of the agreement, not tip its hand one way or the other as to a sentencing recommendation. If it gets that judicial determination from the court, then it can move forward and advocate what it needs to, but not until then. That seems to be the clear import of the Fourth Circuit, the Seventh, you know, and I think the Tenth in these cases as well. And if that's the procedural rule that this court wants to impose in the Ninth Circuit, then the government will know and the courts will know what they need to do. I mean, right now, we do have cases where we have asked the court for a preliminary determination about breach and have district courts telling us that they're not going to do that. And we end up at sentencing and we are in a bind because we believe that intervening circumstances have released us from the obligation, that the sentence that we had agreed upon in the plea agreement because of those changed circumstances is no longer appropriate, but we don't have a district court willing to actually come forward and tell us that. And coming back to your point in Farias, I think the main distinguishing feature there is that the government had no reason and no grounds to separate itself from the plea agreement there. What it was doing was saying we are abiding by the plea agreement, oh, but, wink and nod, we're really not. That's not what we did here. What we said to the court, and I know I'm running out of time. I'm sorry. Do you mind if I finish the answer? Roberts, what we said to the court is these are intervening circumstances that we believe are a reason why we're no longer bound by this plea agreement. And if we are not bound, then this is the argument we will make. In the alternative, if we are bound, then we will advocate for the plea agreement, which is exactly what happened at the sentencing hearing. Can I ask a follow-up question? Sure. If this panel were to decide to take on the rule that other circuits have adopted and say in the future, if the government believes the defendant has breached, you know, they have to file a motion, is it, what should we do on remand? In your view, does it go to a different judge? Does it go to the same judge? Should the government be allowed to ask to withdraw in this circumstance? Sorry. I think in this case, well, first of all, I think in this case, as I said in the papers, I do think that this court, based on this record in the first instance, can make the decision about breach. But if you choose not to, I think what happens here is it gets remanded for that decision in front of the judge. Because again, if the defendant did commit a new crime, then there is no harm here. And so I think that that preliminary question needs to be decided either by this court or by the court below. And then what about counsel's argument that we can't decide as a matter of law whether a defendant committed a new crime because you have to look at the context of the phone call, whether it was hyperbole, whether people actually felt threatened and that sort of thing? I just disagree. At sentencing, the standard of proof is a preponderance of the evidence. And here, all that matters is the conduct that happened in that phone call. It's a ten-minute-long phone call. I don't know if Your Honor's got a chance to listen to it. About five to six minutes of it is the defendant yelling at this caseworker. And under menacing, the statute is very clear about what needs to happen. This court has undisputed facts. If it was a different case and there was no phone call that was recorded, then we would need to put the caseworker up. There'd be credibility determinations that need to be happening. All of that, I think, has to go to the district judge. But here, what we have is undisputable facts and law. And this court is in a perfectly fine position to apply law to undisputed facts and make a determination about whether it fits. I think it's true that if we were to say that it can't be a unilateral decision of the government, and we sort of adopted the sort of ratification, for lack of a better word, the ratification theory, and said that it has to be a court that ultimately decides it, then maybe we could decide it. But if we were to adopt a rule that said that it has to be a court that decides it in the first instance, I don't know how we could decide it because the cat's already out of the bag. No, I think you're right. If you make the procedural rule, then the error here happened. And then the other question I have, I think that's right, yeah. And so then the other question I have is, usually when somebody makes a due process argument, they have to show prejudice also in most circumstances. And so I'm trying to figure out, like, if somebody's making an argument to us, my due process rights were violated. And if we got to the prejudice question, at the end of the day, you're sort of smuggling back in this whole thing because you think, well, at the end of the day, when we look at this, there's no way that a judge would have, even assuming that we didn't have the ratification rule, we said, judge has to decide it on the front end. Unless we just sort of created a, like, you don't look at prejudice, wouldn't the same question kind of come in at the prejudice? And you say, well, at the end of the day, look, when we read this transcript, it's super clear to us that this person breached. And so there's, yeah, the government needed to do it up front, but there's no harm, no foul. You don't show any prejudice, your due process argument loses. It's a fun case, right? I'm glad we're arguing it. Yes, I mean, I think we have the harmless error rule, that harmless error doesn't apply when it comes to breaches. But if what we're doing here is setting a new procedural rule, I think Your Honor is right, that there's no reason why the harmlessness or harmless error test wouldn't come to play on the procedural prong of it. Except it sounds completely inconsistent if we didn't apply that. If we just said the government has to act first, they would kind of create a, it would create an escape valve that sort of took away most of what we'd given in theory. It would be the problem with that rule. I don't know whether that's true or not. I think only in the cases where it's so abundantly clear, where you have indisputable facts and an application of law, and it really is essentially just a question of law applied to facts. But that's not going to be true in most instances. It happens to be true here. I'm not sure that's going to be true in most other cases, at least not the ones I've seen. But you, I think you did remind me of something. There is no harmless error analysis under a Santabello line of cases, is that right? That's right. Okay. So if what we're looking at is the government breach, there's no harmless error. Okay. Yeah. I've taken up a lot of time. If the Court has any other questions, I'm happy to answer them. No, very helpful. Okay, thank you. We'll hear rebuttal from the Senate's counsel. Why don't we give you a couple minutes? Thank you. One thing that is absolutely consistent in all of the Santabello cases is use of the words scrupulous and strict adherence to government promises. When I hear about risk and injecting risk, this isn't Las Vegas. These are due process rights that are giving up major trial rights under the Sixth Amendment. It's a much, it's not something that the government should be able to toy with. It's a violation once it happens because there's no unilateral declaration of a violation. I've never heard, and I've been doing this for a long time, and I've never heard of a court refusing to make a ruling about, on this type of issue. That is not something that's before the court or that should affect the court's decision. There's a breach. That decision has been final. There's no remand on the question of defense breach because the government, both under waiver and forfeiture, has said that they were satisfied with the record as it stood. The only question on appeal is whether they breached. When we talk about remedy, I must confess, I'm, he's already served over, we're talking about three months, 27 to 30 months. He's already done over 28 months of the sentence. I think this court under 2106 could make a perfectly reasonable decision that the just thing to do is to remand him for time served because he's already suffered a month over from the breach. This type of sentence in SORNA is almost always bottom of the guideline, almost always, at least bottom of the guideline because it's frequently below the guideline. Mid-range is rare, and something over that is even rarer. Counsel, Judge Sanchez, I think, asked the other side whether send it back to a different judge or same judge. I assume your view is need to be a different judge? Yes. Okay. Any other questions from the college? All right, well, thank you. Thank you to both sides. With that, the LaVar case is submitted.
judges: VANDYKE, SANCHEZ, Vratil